# United States District Court
## DISTRICT OF CONNECTICUT

SAKKARA BOGLE-ASSEGAI,
**_Plaintiff_**

V.

LISA MARIE BIGELOW,
IN HER INDIVIDUAL CAPACITY

And

MARK O'DONNELL,
IN HIS INDIVIDUAL CAPACITY
**_Defendants_**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No: 301CV2366(JCH)

February 16, 2004

## PLAINTIFF'S LOCAL RULE 9(c)2 STATEMENT

UF-1.    Admit.

UF-2.    Admit.

UF-3.    Admit.

UF-4.    Admit.

1

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-5.        Admit.

UF-6.        Admit.

UF-7.        Deny.

UF-8.        Deny.

UF-9.        Admit.

UF-10.       Admit.

UF-11.       Admit.

UF-12.       Admit.

UF-13.       Admit.

UF-14.       Admit.

UF-15.       Admit.

UF-16.       Admit.

UF-17.       Admit.

UF-18.       Deny.

UF-19.       Admit.

UF-20.       Admit.

UF-21.       Deny.

UF-22.       Admit.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-23.     Admit.

UF-24.     Admit.

UF-25.     Admit.

UF-26.     Admit.

UF-27.     Deny.

UF-28.     Deny.

UF-29.     Admit.

UF-30.     Deny.

UF-31.     Deny.

UF-32.     Deny.

UF-33.     Deny.

UF-34.     Deny.

UF-35.     Deny.

UF-36.     Deny.

UF-37.     Deny.

UF-38.     Deny.

UF-39.     Deny.

UF-40.     Admit.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-41.      Admit.

UF-42.      Admit.

UF-43.      Admit.

UF-44.      Admit.

UF-45.      Admit.

UF-46.      Admit.

UF-47.      Admit.

UF-48.      Deny.

UF-49.      Admit.

UF-50.      Admit.

UF-51.      Admit.

UF-52.      Admit.

UF-53.      Admit.

UF-54.      Deny.

UF-55.      Deny.

UF-56.      Deny.

UF-57.      Deny.

UF-58.      Deny.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-59.     Admit.

UF-60.     Deny.

UF-61.     Deny.

UF-62.     Deny.

UF-63.     Deny.

UF-64.     Deny.

UF-65.     Deny.

UF-66.     Deny.

UF-67.     Deny.

UF-68.     Admit.

UF-69.     Deny.

UF-70.     Admit.

UF-71.     Admit.

UF-72.     Admit.

UF-73.     Admit.

UF-74.     Deny.

UF-75.     Admit.

UF-76.     Admit.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-77.    Admit.

UF-78.    Deny.

UF-79.    Admit.

UF-80.    Admit.

UF-81.    Admit.

UF-82.    Deny.

UF-83.    Admit.

UF-84.    Admit.

UF-85.    Admit.

UF-86.    Admit.

UF-87.    Deny.

UF-88.    Deny.

UF-89.    Admit.

UF-90.    Admit.

UF-91.    Admit.

UF-92.    Admit.

UF-93.    Admit.

UF-94.    Admit.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-95.    Deny.

UF-96.    Admit.

UF-97.    Admit.

UF-98.    Deny.

UF-99.    Admit.

UF-100.    Deny.

UF-101.    Admit.

UF-102.    Deny.

UF-103.    Deny.

UF-104.    Deny.

UF-105.    Deny.

UF-106.    Deny.

UF-107.    Deny.

UF-108.    Deny.

UF-109.    Deny.

UF-110.    Admit.

UF-111.    Admit.

UF-112.    Deny.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-113.     Deny

UF-114.     Deny.

UF-115.     Deny.

UF-116.     Admit.

UF-117.     Admit.

UF-118.     Deny.

UF-119.     Deny.

UF-120.     Deny.

UF-121.     Deny.

UF-122.     Deny.

UF-123.     Deny.

UF-124.     Deny.

UF-125.     Deny.

UF-126.     Deny.

UF-127.     Deny.

UF- 128.    "Number not included"

UF-129.     "Number not included"

UF-130.     Deny.

8

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-131.     Admit.

UF-132.     Admit.

UF-133.     Admit.

UF-134.     Admit.

UF-135.     Admit.

UF-136.     Deny.

UF-137.     Deny.

UF-138.     Admit.

UF-139.     Deny.

UF-140.     Admit.

UF-141.     Admit.

UF-142.     Admit.

UF-143.     Admit.

UF-144.     Admit.

UF-145.     Deny.

UF-146.     Admit.

UF-147.     Admit.

UF-148.     Admit.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

UF-149.     Admit.

UF-150.     Admit.

UF-151.     Deny.

UF-152.     Admit.

UF-153.     Admit.

UF-154.     Admit.

UF-155.     Deny.

UF-156.     Admit.

UF-157.     Admit

UF-158.     Admit.

UF-159.     Deny.

UF-160.     Deny.

UF-161.     Deny

UF-162.     Admit.

UF-163.     Deny.

## PLAINTIFF'S MATERIAL FACTS IN DISPUTE

1.     The CCSU/CREC School for International Studies specifically states twice that

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

three high school credits would be offered to students participating in the 1999, Modern

Pacific Asia Summer Program (MPASP). The same program was offered to Plaintiff's

brother, Javed H. Assegai under the title " Contemporary Global Issues" in July, 2002.

Javed completed the program and received three credits (See Exhibit A)

2.      This is a direct untruth. Defendant is misrepresenting Plaintiff's deposition. (See

Exhibit "20")

3.      Professor Robert Fitzsimmons was never deposed therefore, Plaintiff never had

an opportunity to cross-examine him. Additionally, the state Commission on Human

Rights and Opportunities does not allow counsel representing the parties to cross-

examine the parties.

4.      Plaintiff was not disruptive. (See Exhibits "C" & "D") Plaintiff  knows nothing of

Professor Robert Fitzsimmons health problems. Plaintiff neither caused the Professors

resignation or his death on December 3, 2000, as suggested by Defendant. (See Exhibit

"21"). Plaintiff 'interacted' with Professor Fitzsimmons in one class for a period of one

hour on Wednesday, July 7, 1999. (see Exhibit "N").

5.      Professor Marsh states in his deposition that a discussion among the students

about the poster incident, was already in progress when he entered into the room to

begin his class. Professor Marsh also stated that Sakkara treated him with respect.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

(See Exhibit "B")  Professor Marsh also acknowledged that a person can be debating and still be respectful.  He also stated that Sakkara never exhibited any behavior, which he considered "rude", calling him bad names, not outwardly disregarding any statement he made to her. (See Exhibit "C").  Professor Marsh said that Sakkara stated her position in a "discussion" format.  Plaintiff did not argue but simply stated her views. (See Exhibit "D").

6.      Professor Marsh also stated that Sakkara was a student who was engaged and interested in the material being presented and paid attention to the material at hand. Plaintiff was not threatening to anyone, and her behavior according to Professor Marsh was not uncommon for other students in her class.  Professor Marsh states, ..."I did not have a problem with Sakkara". (See Exhibit "D")

7.      In fact, Sakkara's exemplary attitude and academic excellence is what prompted the teacher for 'gifted and talented' students, at Bloomfield High school, attorney Spencer Clapp and the principal of Bloomfield High School, Benjamin Foster Jr., to write regarding such. (See Exhibit "22")

8.      On July 1, 1999, Richard Judd sent a letter to all attending the program which encouraged discussions whether "lively" debates or casual conversations  (See Exhibit "E").  Lisa Bigelow, who wrote the Student & Parent Handbook Modern

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Pacific Asia Summer Program (MPASP) stated that respect for all instructors,

counselors and classmates, was to be had.

9.      Rule #3 states that each student was expected to participate in classroom

assignments, discussions and activities.    Rule #4 says that each student will be

attentive while in class and ask intelligent, thoughtful questions and most important,

Rule #5 says that each student is to display self-confidence.  The rules as set out in the

Student and Parent Handbook were never used with Plaintiff.  (See Exhibit "F").

10.     The Program Director had particular concerns, including the concern of

inappropriate materials being posted on School property that could have been and

was perceived as detrimental and racially motivated.  (See Exhibit "G")  Also there

was another student who was referred to as Student #2 who was disruptive and a

student (Student #3) who got caught sneaking around in an unauthorized area of

the campus in the early part of the morning. (See Exhibit "H").  These students

were given the opportunity to complete the program.

11.     Kristopher Perruccio, MPASP Program Assistant, saw the poster that was on the

wall (See Exhibit "23").  The poster is alleged to have had the words,  "Jews out,

Negroes out" written on it.  Kristopher Perruccio stated,   ".. ... it could be construed

as racist, someone could take offense at it." (See Exhibit "23").   Mr. Marsh also

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

found that this poster could be racially offensive and stated so. (See Exhibit "I").

12.     The Residential Life Director responded by discarding the poster that caused the

extensive debates and discussions amongst the students attending the program

during the first week of the program. (See Exhibit "J"). Also submitted are the

actual statements taken by the CCSU Police Department stating evidence of the

posters.  (See Exhibit "24")

13.     The fact that a discussion regarding the poster and the contents of the poster

was being held before the classes started by a number of students, clearly illustrates

that its contents were sufficiently offensive to directly impact classroom activities,

lectures, discussions and the learning activities of the Program.  Professor Marsh asked

what was being discussed and it was the Plaintiff who answered him. (See Exhibit "K").

14.     The decision to dismiss Plaintiff was already made prior to her parents coming to

pick her up from school on July 9, 1999.  (See Exhibit "L") Professor Marsh states

in his deposition, "...and to ask these students that we identified to leave at that

point on Friday at 5:00, their parents would already be there, they wouldn't have to

come at a special time to pick them up, they would just be a matter of at that point

saying,   do not bring your students back on Sunday evening." (See Exhibit "L").

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Lisa Fellage Bigelow in her July 12, 1999, statement to campus police, stated in pertinent part, ".....I was gearing myself up to intercept the conversation and state that I was DISMISSING his daughter from the program.  About fifteen minutes after our meeting began I did interrupt him and state that, I CALLED THE MEETING to DISMISS his daughter from the program.  (see Exhibit "33").  Plaintiff's parents NEVER called or initiated any meeting with Lisa Fellage Bigelow, rather, Plaintiff's mother wrote to Dr. O'Donnell and copied Bigelow, with no response.

15.     According to Professor Marsh's, other students were given a chance to sit  down in a professional manner with their parents and faculty to discuss the situation before being expelled.  (See Exhibit "M").  No other student was expelled from the program.  What is more disturbing is according to Professor Marsh's testimony **five or six** "white" students who were involved in the "random" game, which was culturally insensitive or racist, were reprimanded on a demerit system and verbally warned – **these students were not discussed by Dr. O'Donnell, Professor Marsh or the Program Director when students were being reviewed for expulsion**.

16.     The demerit system was never considered for use with Plaintiff.  (see, Exhibit "12").  Professor Marsh also stated that there was **a group** of Spanish

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

students who were confrontational and would not be quiet after being asked repeatedly - **Dr. O'Donnell, Professor Marsh nor the Program Director, Lisa Bigelow, discussed these students when students were being reviewed for expulsion.**

17.     Also, Professor Marsh stated that there were **some** male students who were actually physical, as he used the words, "they would try to get in my face, which they didn't do so often but some of the male students did" - **these students were not discussed by Dr. O'Donnell, Professor Marsh or the Program Director, Lisa Bigelow when students were being reviewed for expulsion.** (See Exhibit "M") The expulsion of Plaintiff from the program was not based on any repeated or substantial behavioral problems on Plaintiff's behalf. (see Exhibit "2").

18.     Professor Marsh stated that there was one instance where Sakkara was talking and after he spoke to her, she got up, moved her seat, sat in the front and apologized to him. (See Exhibit "M") According to the testimony of Susan Lesser, after Plaintiff had a chance to express her beliefs and views in the Town Meeting, she felt better about the Program and did not register any complaints about it to other students or faculty." (See Exhibit "O").

16

19.     Plaintiff was however, **discussed by Dr. O'Donnell, Professor Marsh and Lisa Bigelow, as a student to be expelled from the program.** Plaintiff was expelled as an act of retaliation because she spoke up to program administrators, professors and her student colleagues about the poster and what she believed to be different treatment of Black and Latino students in the program.  When Plaintiff's mother Femi Bogle-Assegai wrote to Mark D. O'Donnell, the CREC Program Director on July 9, 1999, she was expressing concern regarding the unacceptable treatment of the students enrolled in the program. (See Exhibit "25").  This letter was faxed to Mr. O'Donnell and Lisa Bigelow, by 9.00am on the morning of July 9, 1999, well before, Plaintiff was picked up for the weekend.

20.     The letter of dismissal for Sakkara dated July 9, 1999, and signed by Lisa Bigelow,   (See Exhibit "26") states that Dr. O"Donnell was in agreement with the expulsion and so the matter was closed. (see Exhibit "32")    Plaintiff was left with no recourse, however because Plaintiff's parents did not take the letter from Lisa Bigelow, Plaintiff's mother appealed to Dr. O'Donnell to allow Plaintiff back into the program by way of letter dated Saturday, July 10, 1999.  (see Exhibit "18").

21.     Bigelow's dismissal clearly illustrates that Defendants Bigelow and Defendant O'Donnell made the decision to expel Plaintiff, without following any established

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

rules and regulation for the running of the program and without any appeal rights left open to Plaintiff's parents. (see Exhibit "26").

22.    According to the Student Parent Handbook, the authority to implement actual dismissal or suspension was specifically outlined. (see Exhibit "F").  No regard was given to these provisions.  In her affidavit, Susan Lesser states that the Handbook could not "practically" be implemented and thus was not. (See Exhibit "P")  The Handbook states that all participants in the MPASP including program staff, must pledge their commitment to this guide to community living"...Unless otherwise noted, the disciplinary actions to be taken are as follows: 1st violation: verbal warning to student, 2nd violation: written warning sent to  parent/guardian and 3rd violation: dismissal from the Summer program.  (See Exhibit "Q").

23.    Professor Marsh states in his Deposition that the decision to dismiss Plaintiff was already made and that his opinion on whether Plaintiff should stay in the program would depend 100% on the way Dr. Assegai and Plaintiff reacted to "their" statements. (See Exhibit "R").  After pledging her commitment to her own rules and guidelines as the author of the Parent Handbook, Ms. Lisa Bigelow did not follow them with Plaintiff. Plaintiff was never told "formally" in a meeting with Ms. Bigelow or CCSU faculty that

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

she was receiving a verbal warning, which is the first step in Defendant's progressive disciplinary procedures. (See Exhibit "Q").

24.    Professor Marsh states that an opportunity was given to another student and their parents to discuss issues of concern before any decision to dismiss the said student was made. This student was never dismissed. (See Exhibit "S"). Also, Defendant's written notice as outlined in the Parent Handbook would not have been one of dismissal but rather, one inviting the parents to discuss issues of concern with the student. (See Exhibit "Q"). This letter, had it been sent, would have been timely, because it would have been received on Saturday July 10, 1999, and Plaintiff's parents would have been afforded the opportunity to discuss any issues of concern with Plaintiff.

25.    In the Affidavit of Evelyn Garcia, one of the other parents involved in the racially motivated incidents, Evelyn states that she felt powerless and intimidated with regards to standing up for the rights of her daughter. Lisa Bigelow, made it clear that if Evelyn's daughter Dionne did not ignore the issues of racial discrimination as they manifested in the program, Dionne would be dismissed from the program. (See Exhibit "27")

26.    Also, Mr. W. Reggie Hales, father of LaTonna one of the three Bloomfield High School students who participated in the program, stated that the staff were insensitive

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

under the leadership of Lisa Bigelow.  In fact Ms. Bigelow, stated that she would dismiss

LaTonna from the program for speaking up and providing leadership to other students

on issues of  race of diversity.  LaTonna was not expelled from the program. (See

Exhibit "28").

27.    Defendants failed to comply with their own procedures as outlined in the Parent

Handbook (See Exhibit "P") Also, at different times for other students, not of Plaintiff's

same cultural and racial background a "demerit system" was used and it afforded

students who committed a culturally insensitive act to remain in the program. (See

Exhibit "Y")

28.    Professor Marsh states specifically that another student was afforded the

opportunity to have their "issues" discussed, and allowed to stay in the program.  (See

Exhibit "U") The notice of procedure in the Handbook that had been written by the

Program Director, states that written notice be prepared and mailed to the parents to

discuss said issues of concern and not summary dismissal.  The letter that was written

to the Plaintiff's parents was one of dismissal. (See Exhibit "V").

29.    Plaintiff, expressed her views on the treatment of Black and Latino students, to

Lisa Bigelow, Susan Lesser, Professors and her student colleagues. (see Exhibit "V"

and Exhibit "W"). These views were expressed in the Town Meeting and to Lisa Bigelow

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

and Susan Lesser as administrators directly. (see Exhibit "V" and Exhibit "W").  Plaintiff followed the rules of the program by contacting management with regard to the manner in which Black and Latino student participants of the program were being treated.  (See Exhibit  "W").  Plaintiff did as she was instructed. Plaintiff complained to Lisa Bigelow. (See "Exhibit "2").

30.     Plaintiff's parents received a telephone call from Plaintiff and her room mate, who was very distraught and complaining about the existence of a racially insensitive poster and how they were being treated by some professors. Plaintiff expressed to her parents the dismissive manner in which the expressed racial animus was handled, as well as the overall manner in which Black and Latino students were being treated by their Caucasian peers and some members of the faculty. (See Exhibit "X").

31.     In the application to the State Department of Education, Bruce Douglas, the Assistant Executive Director of the Capital Region Education Council and Mark O'Donnell stated that they would conduct pre and post tests of intercultural sensitivity to gauge the participants increased understanding of intercultural sensitivity throughout the program.  (see Exhibit "32")

32.     When the Plaintiff complained of discrimination and objected to Black and Latino students being subjected to treatment from their white peers, some faculty and some

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

staff, insensitively, Plaintiff was dismissed from the program. Plaintiff was never tested. (See Exhibit "Y"). The application also stated that this program would assist in meeting the need to reduce racial isolation within the State of Connecticut, through inter-district cooperation. (see Exhibit "32")

33.    This program was supposed to offer students the opportunity to build bridges between communities through the nature of the program itself. (See Exhibit "Z"). Plaintiff suffered from the gap between two different ethnic communities and was never afforded the opportunity to bridge the gap. (see Exhibit "26")

34.    The writings on the poster cannot be reviewed, because Kristopher Perruccio determined it to be insensitive and destroyed it.    In other words the evidence was destroyed by Defendant. (see Exhibit "G") The boys attending the program said that it was taken down and destroyed. (See Exhibit "1")

35.    The fact that Defendants continue to claim that Plaintiff was rude, disruptive and not fit to continue the program does not mesh with the reports and commendations Plaintiff received from *Gifted and Talented* programs Plaintiff has successfully attended in previous years. (see Exhibit "29").    Plaintiff has many, many certificates of completion that show that this environment was not new to Sakkara and she was never hailed as the rude and disruptive child that Lisa Bigelow made her out to be.  Also,

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Plaintiff continued to receive invitations to participate in CREC programs, following her dismissal from the 1999 program. (see Exhibit "29"). CREC continued throughout 2000 to invite Plaintiff to CREC summer programs. (see Exhibit "29").

36.     After speaking with their daughter, Plaintiff's parents wanted to know what was being done about the posters that was posted in the boys dormitory. (See Exhibit "3"). Plaintiff's parents had already contacted CREC and CCSU about the Treatment  Black and Latino students were experiencing in the program, prior to the existence of the poster. (see Exhibit "30").   Beginning as early as Tuesday, July 6, 1999, Plaintiff's mother spoke with Rhonda Patman of CREC and expressed her concern about  the racially charged environment in which the Black and Latino students were having to live and work, because Plaintiff shared with her mother that non-white students were being treated differently on the program by some faculty and staff. (see Exhibit "30").

37.     Following Plaintiff's mother's notification to CREC and CCSU about the poster incident, Plaintiff's parents were awaiting a response from either Ms. Patman and/or Dr. O'Donnell (See Exhibit "30").   Plaintiff's parents do have first hand knowledge of discrimination and its impact on individuals and groups.   The mother managed two (Southwest, Fairfield County and West Central, Middlesex County) different State Commission on Human Rights and Opportunities Regional Offices for close to ten

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

years, while Plaintiff's father, a freelance writer and a critic, has an Education and

Training Institute which focuses on Diversity and Cultural Issues. (See Exhibit "4")

38.    Dr. Assegai and Mrs. Assegai wanted to protect their daughter from having to be

in a racially charged and racially hostile environment. (See Exhibit "5").

Every parent has the right to protect their offspring from harm. The parents were

never informed or notified by the faculty of CCSU or administrators of CREC that

there was a problem with their daughter. They were inquiring about the poster

incident and the general environment in which their daughter and all the students

were having to live and work. (See Exhibit "6").

39.    Dr. and Mrs. Assegai arrived at CCSU with the intent to pick up their daughter for

the weekend. Mrs. Assegai had already written a letter of concern to CREC and

copied it to CCSU. (See Exhibit "7"). Had Lisa Bigelow, followed her own

written rules and guidelines, which called for a) verbally warning a

student that his/her behavior would warrant expulsion and b) discussing issues

with the parents by written notice, (See Exhibit "Q"), it is unlikely this case would be at

Bar today.

40.    Dr. and Mrs. Assegai, were repeatedly ignored by Program Director Bigelow and

Administrator Dr. O'Donnell, following written and telephonic communication from Mrs.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Assegai. They were told that Plaintiff was expelled and defendants' would have no

further discussion. (See Exhibit "7"). When no one would answer Dr. Assegai's wife and

treat her with respect, he demanded answers. (See Exhibit "8"). The Program Director

did not want to address Dr. Assegai's or Mrs. Assegai's concerns. (See Exhibit "9").

41.    Professor Marsh stated that the decision to dismiss Plaintiff was made prior to

the arrival of her parents. (See Exhibit "L") Defendants disregarded their own

guidelines related to "Community Living in Carroll Hall, in the parent Handbook

(See Exhibit "Q"). Certainly, Defendants' expelled Plaintiff from the program for

reasons other than their concern for the well being of all the students in the

program. Indeed, Lisa Bigelow stated that, Plaintiff's return to the program would

be determined by the behavior of her father, a man whom she had never met. (See

Exhibit "31").

42.    Dr. and Mrs. Assegai, following Lisa Bigelow's dismissal/expulsion of their

daughter, and Bigelow's refusal to engage in any discussion, determined that no

resolution was possible. At that point they decided to leave the premises. (See

Exhibit "11"). Lisa Fellage Bigelow, was not ready to continue with the meeting as

stated in Defendants Rule 56(a) statement. If as states in her police statement of July

12, 1999, that she called the campus police who, if Plaintiff's parents had not already

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

left CCSU Caroll Hall building, would have brought a more abrupt end to the meeting which she successfully did herself when she dismissed Plaintiff. (see Exhibit "33"). Mrs. Bogle-Assegai continually contacted the Program Director and   Mark O'Donnell regarding the disturbing atmosphere in the program and the dismissal/expulsion of Plaintiff. (See Exhibit "13").

43.     Different treatment of the students was practiced by management during the course of the program.  The white males who engaged in a racial incident, were given the respect and opportunity to benefit from the rules written in the Parent Student Handbook (See Exhibit "Q").     These men met with resident staff and were given a verbal warning by Kristopher Perruccio.  No written letter was sent home to the parents of the young white men, regarding their involvement in a racial incident, despite the need for a floor meeting because of  the negative effects of the incident  on the entire student body. No written letter of dismissal was ever given to the parents of any of these white males. (See Exhibit "14").

44.     Because of the racially charged environment in which Plaintiff lived and worked between July 5, 1999, and July 9, 1999, Plaintiff was physically and mentally distraught. After receiving counsel and comfort from relatives, who were trying to heal her psyche,

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

her parents sent her out of the country to recuperate from the embarrassment and shame of being dismissed/expelled from a summer program. (See Exhibit "15").

45. Plaintiff also had to take additional courses, in High school the following school year because she was denied the three credits guaranteed to her, had she been afforded the opportunity to complete the program, as the white male students, were following the disciplinary warning they were given. (See Exhibit "A"). Upon receiving the news that she was being expelled from the program, Plaintiff and her parents were in shock. Plaintiff was embarrassed and in total disbelief. (See Exhibit "16").

46. Defendants state that adjustments were made to facilitate further racial problems among students in the program. This is a tacit acceptance that there were racial issues which existed within the program. Defendants' cannot have it both ways, if there were no racial and/or cultural issues in the program, why make "adjustments" to prevent further racial problems among students.

47. This adjustment was done after Plaintiff left. The CREC Evaluation Report of January 2000, stated in pertinent part, *"although there was one substantive issue with a student, it was an isolated incident and was resolved in an efficient and professional manner by the CREC/CCSU management team."* (See Exhibit "Y"). The "team" chose to deal with the student (Plaintiff) rather than the issue - which was the fact that five

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

white students wrote and posted insensitive material that was offensive to Black and Latino students.    According to Professor Marsh he did not believe the level of insensitivity shown in the summer program was condoned by the University or its staff. (See Exhibit "17").

48.  This law suit pertains to Plaintiff Sakkara Bogle-Assegai and not to her parents. Dr. Assegai's contact with Lisa Bigelow came on the evening of Friday, July 9, 1999, when both parents arrived to take their daughter home for the weekend.    There was no contact with Lisa Bigelow before that date and there has been no contact with her since that date. Defendant admits this to be so. (see Defendant 56(A) 1 Statement UF116).

FOR PLAINTIFF - Sakkara Bogle-Assegai

By_____
Cynthia R. Jennings, Esq. (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street - Bridgeport, CT 06604
(203) 334-4800 (O) - (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

28
Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

## CERTIFICATION

This is to certify that the above Plaintiff's Local Rule 9(c)2 Statement was

mailed by first class mail to the following  on February 16, 2004:

Nyle K. Davey,
Assistant Attorney General
Attorney General's Office
55 Elm Street (Annex 3rd Floor)
P.O. Box 120
Hartford, CT 06141-0120

Linda Yoder
Shipman & Goodwin, LLP
One American Row
Hartford, CT  06103-2819

The Honorable Janet C. Hall
United States District Judge
United States District Court
915 Lafayette Boulevard
Bridgeport, CT  06604

Cynthia R. Jennings, Esq.

29
Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net