UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAKKARA BOGLE-ASSEGAI<br>*PLAINTIFF*, | : CIVIL ACTION NO.<br>: 3:01CV2365 (EBB)<br>: |
| v. | : |
| LISA MARIE BIGELOW, *In Her Individual Capacity*,<br>*DEFENDANT*. | :<br>: MARCH 16, 2004 |

### DEFENDANT BIGELOW'S REPLY TO PLAINTIFF'S OPPOSITION

On October 9, 2003, Defendant Bigelow, *in her individual capacity* and as the only remaining defendant in this action, filed a Motion for Summary Judgment [Dkt. No. 58], a Memorandum of Law (Def. Memo.)[ 59], and a Statement of Undisputed Facts (UF)[ 60]. This filing was supplemented thereafter (Def. Supp.)[61, 68]. On February 16, 2004, the Plaintiff filed her papers in opposition, including a Memorandum in Opposition (Pl.Opp.)[83] and a Local Rule Statement of Facts (Pl. LRSF)[85].[1] Bigelow now replies.[2] D.Conn. L. R. 7(d).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts" to show that a genuine issue of material fact is present and requires a trier of fact to establish the ultimate material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 255 L.Ed.2d 202, 106 S.Ct. 2505 (1986); Graham v. Long Island R.R., 230 F.3d 34, 38 (2nd Cir.

---

[1] On February 26, 2004, the Court, the Honorable Janet C. Hall, ordered the case transferred to the Honorable Ellen Bree Burns [Dkt. No. 79].

[2] Also on February 17, 2004, the Plaintiff filed a motion for leave [Dkt. No. 78] to file a consolidated brief in this case and a consolidated case, *Bogle-Assegai v. Mark O'Donnell*, 3:01cv2367 (EBB)(formerly JCH), to which Bigelow consented [81] and requested a reply date ten days after a ruling. On March 4, 2004, the Court, the Honorable Ellen Bree Burns, granted the motion on for leave [82]. On or about February 26, 2004, the Plaintiff filed a motion for extension of time to file a corrected brief [81]. On February 27, 2004, Defendant Bigelow objected [86]. On March 11, 2004, the Court, the Honorable Ellen Bree Burns, denied the motion for extension of time [87], to wit this Reply is directed at Pl. Opp. [83], dated February 17, 2004, and Pl. LRSF [85], dated February 16, 2004.

1995). The nonmoving party must do more than rely "merely allegations or denials". <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (1995); <u>Busque v. Oakwood Farms Sports Center, Inc.</u>, 80 Conn. App. 603, 607, 836 A.2d 463 (2003). The nonmoving party may not merely offer "speculation or conjecture" as to the facts. <u>Opals on Ice Lingerie v. Bodylines, Inc.</u>, 320 F.3d 363, 370 (2nd Cir. 2003); <u>Lipton v. The Nature Company</u>, 71 F.3d 464, 469 (2nd Cir. 1995). See also: <u>Galligan v. Town of Manchester (Conn.)</u>, 2003 U.S. Dist. LEXIS 8362 (decided May 19, 2003; Goettel, U.S.D.J.)(Sum. Jdt. granted to defendant on claims of discrimination, retaliation, due process, and intentional infliction of emotional distress).

In Pl. LRSF Part I, the Plaintiff admitted 100 of the 160 of the Defendant's Statements of Undisputed Facts (UF) and they are affirmatively admitted. As to the other 60, the Plaintiff gave only general denials and made no reference to any basis for any such bare assertions; no affidavits; no admissible evidence; no transcript cites. The Plaintiff failed to comply with clear obligations set forth in Local Rule 56(a)3. The Court should treat all UFs as uncontroverted and should be accepted as fact. The Court (nor the Defendants) should not be forced to ferret out the evidence or documents. There are no genuine issues of material fact remaining.

In Pl. LRSF Part II, the Plaintiff puts forward 48 claims of material facts in dispute. Plaintiff's claims do not create any triable issues on any material fact. For example, in Pl. Opp. at 1 and Pl. LRSF Part II ¶ 7 (Exh. 22: Affidavit of Spencer Clapp), the Plaintiff continues to grasp at her status as a "talented and gifted student." The supporting affidavit states that Mr. Spencer is a teacher for talented and gifted students, but does not (as suggested by the Plaintiff) stated that the Plaintiff is a "talented and gifted student." The Plaintiff, not Mr. Spencer, concluded that she is a "talented and gifted student." To the contrary see, Def. Memo. at 3(n.3 & 4), at 13 (n.14 & 15); UF-18 (Denied); UF-147 (Admitted); UF-149 (Admitted). If even it is

so, it is not a material fact that affects the outcome of the pending motion for summary judgment as her status of talented or gifted was not and is not a factor considered by Defendant Bigelow in rendering the administrative decision upon which the Plaintiff is suing.[3] Other examples of deficiencies in her statement of disputed facts are integrated below.[4]

### I. THE PLAINTIFF CONCEDES FACTS THAT DISPROVE THE CAUSAL CONNECTION REQUIREMENT AS TO HER FIRST CLAIM FOR RELIEF

In Def. Memo. at 16-30, Defendant Bigelow showed that the Plaintiff could not meet each and every element of the claims of relief filed. In Pl. Opp. at 9-15, the Plaintiff states that she has met each and every element of her First Claim for Relief sounding in retaliation under the First Amendment. The Plaintiff's factual assertions fall short on the necessary element of causation. First she has yet to show any harm. Even so, the claimed protected speech that she identified and the decision to dismiss her from the program are not in a causal relationship. The Plaintiff concedes that the decision to dismiss her was made on Thursday, July 8, 1999, at lunchtime by Dr. Marsh, Dr. O'Donnell, and Defendant Bigelow.[5] Pl. Opp. at 15. That lunch

---

[3] Nor was it a factor used by CREC in admitting participants to the program. See UF 18 and its supporting evidence.

[4] See, e.g., Pl. LRSF ¶4: no one has ever said that the Plaintiff caused Prof. Fitzsimmons death; Pl. LRSF ¶3: Plaintiff claims "no cross examination at CHRO," but see Def. Memo. Att. G at 94 line 24-25 where Plaintiff's counsel states she has no more questions.

[5] In Pl. Opp. at 12 and Pl. LRSF Part II ¶¶5 & 6, the Plaintiff claims that Dr. Marsh had no problems with the classroom conduct of the Plaintiff and her slim inference rests on limited citations to the Deposition of Dr. Marsh. However, the Plaintiff offers no evidence to create a triable issue related to the facts that Dr. Marsh complained to Defendant Bigelow about the Plaintiff's classroom behaviors, participated in the decision to dismiss the Plaintiff, and agreed that dismissal was warranted, subject to the response of the parents in supporting continued participation or not. UF-33 (Denied); UF-39 (Denied); UF-60 to -63 (all Denied). There is no triable issue related to what Dr. Marsh told Defendant Bigelow and the fact that she relied on the information that he provided that was consistent with other reports. UF-36 (Denied). Plaintiff concedes that she had classes with all three professors identified by Defendant Bigelow as having concerns. UF-25 (Admitted). In LRSF II ¶12, the Plaintiff claims that Dr. Marsh saw the "random" poster and found it "racially offensive." However,

3

time meeting came before the town meeting. The town meeting was held on Thursday from 3:00 to 5:00 p.m. UF-70 (Admitted). The plaintiff further concedes that her protected speech was made during the town meeting. Pl. Opp. at 10; UF-74 (Admitted). As a matter of law, the causal connection is broken. An event that is earlier in time cannot be caused by one later in time.[6] See Pl. Opp. at 10. The Plaintiff's argument fails because it is illogical. No trier of fact could conclude that the protected speech came first (if it was exercised at all). Again, assuming *arguendo* that the Plaintiff did engage in free speech (which she did not), the Plaintiff's speech can not be a motivating factor in allegedly offensive decision having come later in time. See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107-108 (2nd Cir. 2001).

The Plaintiff claims that her town meeting exercise of free speech related to the "random" poster.[7] Pl. Opp. at 4 & 9. The Plaintiff offers no direct admissible evidence as to the racially inflammatory language that she claims was on the "random" poster. She did not personally see it. UF-53 (Admitted). The Plaintiff presented no evidence that the "random poster" said anything other than "CHEESE, RANDOM, PORN, CATHOLIC – JEW, SAUERKRAUT, I AM A GREEN AND PURPLEY MAN." Pl. Opp. Attachment 24 (CCSU Police Report). The only

---

Plaintiff's reference to her own Exhibit "I" is to the deposition transcript of "Perruccio" and lends nothing to her claim as to Dr. Marsh's perception of anything.

[6] The Plaintiff's claim to a private conversation with Defendant Bigelow has the same defect. See Pl. Opp. at 9-10 and Attachment 2 wherein the Plaintiff testifies under oath that she spoke privately to Defendant Bigelow on Friday morning. Excerpt of Deposition of Sakarra Bogle-Assegai, June 19, 2003, at page 70, line 8 through page 71, line 16. It is starkly revealing that in Pl. Opp. at 10, and specifically footnote 2 therein, the Plaintiff attempts to avoid any reference to the time of the discussion with Bigelow.

[7] Plaintiff offers no evidence that Defendant Bigelow attended the town meeting or was even aware of the Plaintiff's alleged exercise of her free speech at the meeting or in the manner claimed. See UF-64 (Denied). See Def. Memo. Attachment A: Affidavit of Lisa Maria Bigelow, ¶88; Attachment F: Affidavit of Susan Lesser, ¶56. The Plaintiff offered nothing to the contrary or even suggesting a triable issue is present on these facts. *See* Pl. LRSF.

4

eye witness, Mr. Peruccio, states under oath that the "random" poster was <u>not</u> racially inflammatory. UF-48 (Denied).

The Plaintiff presented no competent evidence in Pl. Opp. or her LRSF Part I or II that any poster that contained the inflammatory language that the Plaintiff and her parents claim, i.e., "NIGGERS OUT, PUERTO RICANS OUT, WHITES RULE AND WHITES ARE THE BEST." The only source of racially inflammatory language has been the Plaintiff and her parents.[8] There is no triable issue that the "random" poster incident was "racially" charged or motivated as plead.  See Def. Memo. at 8(n.12).

The Plaintiff also concedes that by the morning of Friday, July 9, 1999, she felt that her concerns had been addressed, i.e., the "random" poster incident, and she had no complaints about the Program at that time. UF-91 (Admitted); UF-92 (Admitted); UF-93 (Admitted).

## II.   PLAINTIFF ENJOYED SUFFICIENT DUE PROCESS FOR A DISMISSAL FROM A SHORT SUMMER PROGRAM

In Def. Memo. at 20-27, Defendant Bigelow showed that sufficient due process was provided to the Plaintiff as was due for a short term summer program. In Pl. Opp. at 15, the Plaintiff overstates her right to due process. Defendant Bigelow made no decision affecting any constitutionally or statutorily protected educational right of the Plaintiff, i.e., her right to 180

---

[8]  In fact the Plaintiff conceded that the parents have no direct personal knowledge nor can offer competent testimony about the classroom activities, the "random" poster, the "rumor" poster, or the "town meeting." UF-81 (Admitted); UF-82 (Admitted). The "rumor" poster is not the central issue in this action. The "rumor" poster becomes an issue only after the parents become involved after a late Thursday night or early Friday morning telephone call from the Plaintiff to her parents. Plaintiff needs to create an issue related to racial discrimination to get even a slight toe hold on any chance that the Court will find a matter of public interest in her Free Speech claim of retaliation. The Plaintiff is pulling on her own bootstraps. The central issue here is what Defendant Bigelow knew, what she did with that knowledge, and the provision of adequate due process to the Plaintiff as demonstrated in Def. Memo. and her UF (and its supporting evidence). No triable issue exists on those issues.

5

days of free public education in the town where she resides as established under Article VIII, Section 1 and the General Statutes of Connecticut. The Plaintiff enjoyed that right at all times.[9] No Constitutional right attached to the short term summer program.

The Plaintiff failed to address the nature of the constitutional and statutory right in question as to the voluntary short term (nineteen day) summer program. See Def. Memo. at 20-27; See also: Ruling on Defendants' Motion to Dismiss, entered February 10, 2003 [Dkt. No. 32](The Court, the Honorable Janet C. Hall, U.S.D.C., finding that no authority on point.). Even after specific notice from the Court that no authority was known on this point in the Ruling and after Defendant Bigelow pointed it out again in her memorandum of law, the Plaintiff still refused or failed to establish that she held a legal right that warranted due process protections beyond the basic opportunity to be heard as required by <u>Matthews v. Eldridge</u>, 424 U.S. 319, 96 S.Ct. 593, 47 L.Ed.2d 18 (1976); <u>Kelly v. Goldberg</u>, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiff failed as to show that she engaged in any protected activity.

The only property interest described by the Plaintiff related to the possibility that the Plaintiff could earn three high school credits from her high school if she completed the Program successfully and her high school agreed to grant them. Pl. Opp. at 15. Her representation

---

[9] For the same reason, the state law claim under Conn. Gen. Stat. §46a-75 should fail. See Def. Memo. at 28-30; Pl. Opp. at 17. Plaintiff conceded that she was admitted by CREC. UF-12 (Admitted). The Plaintiff cites no authority for the proposition that a student has the right to disrupt the classroom environment and deprive other students of the educational experience that the faculty is attempting to deliver. Nor is the Plaintiff claiming that an program director (here a short term summer program) may not dismiss a student who is disruptive to the educational process, following due process. The state statute in question does not give a participant absolute immunity from misbehaving. Here Defendant Bigelow had three complaints from three faculty members (including her academic director) and the Program's residential director. A deliberative process was done administratively with CREC and then the student was given an opportunity to be heard. There is no violation of §46a-75.

defeats her own claim. First, the Plaintiff was not entitled to the credits merely by enrolling in the Program. The Plaintiff was <u>not</u> vested with an enforceable right to the credits prior to completion of the Program. She had not yet earned the credits by July 9, 1999.[10] As a matter of law, the Plaintiff had merely an expectation from her local educational agency, if they approved by her school. Defendant Bigelow in *her individual capacity*, the only remaining defendant, could not and can <u>not</u> grant credits. This court can not force a remedy where none exists.

Assuming *arguendo* that once admitted to the Program that the Plaintiff was entitled to at least minimal due process protections, Defendant Bigelow provided ample opportunity for the Plaintiff to use the available due process.[11] The Plaintiff acknowledges that Bigelow could have reversed the proposed dismissal decision during the meeting on Friday afternoon. Pl. Opp. at 16.

---

    This Court should also consider declining to take up this state law question, given that the federal issues can otherwise be disposed. See Def. Memo. at 27-28.

[10] Further, neither Defendant Bigelow nor her employer were or are authorized to issue high school credits. They do not. The Plaintiff offers no support for her proposition that Defendant Bigelow, in her *individual or official capacities*, grants or issued high school credits and no credible evidence was put forward by the Plaintiff on this point.

[11] As to her claim that she was entitled to more due process than was given, the gravamen of her opposition is that the steps in the Student Handbook were not followed. Pl.Opp. at 16. Defendant Bigelow concedes that the disciplinary steps in the Handbook was not followed. Her rationale was that following the full procedure would have been ineffective. Defendant Bigelow notes that she wrote the policy in the Handbook, but later realized that the nature of the short term summer program required more immediate and decisive decision making. The Handbook is not a duly adopted regulation and does not have the force of law. While Defendant deviated from the Handbook text, she did so in a manner that preserved the minimum due process due in the context of the summer program. Even with the deviation, sufficient due process was provided, again, a point conceded by the Plaintiff, but for the outcome. There is not factual basis to support that a claim that Defendant Bigelow deprived the Plaintiff of due process since, again, the Plaintiff concedes that the due process given was sufficient for Students #2 and #3. The Plaintiff received the same due process. See Pl. Opp. Attachment 18 (p. 1, fourth paragraph, last sentence), where on the very next day (July 10, 1994), Plaintiff's mother had "[n]o doubt" that the Plaintiff would have been given a second chance, but for the parent's conduct. Any claim of due process related to reinstatement in the program does not run to Defendant Bigelow. The Plaintiff did not petition Defendant

In Pl. Opp. at 17, the Plaintiff concedes that she would have had sufficient due process if she had been granted the same notice and opportunity to be heard that Students #2 and #3 were given. The undisputable material facts are that Defendant Bigelow gave the Plaintiff and Students #2 and #3 the same notice and opportunity to be heard, including verbal notices.[12] That the Plaintiff did <u>not</u> utilize the notice and opportunity as productively as Students #2 and #3, does <u>not</u> mean that the notice and opportunity were <u>not</u> adequate. The <u>Matthews</u> and <u>Kelly</u> due process requirements are <u>not</u> judged by the outcome and are not automatically deficient if the outcome is adverse to the person wanting more notice or more of an opportunity to be heard than satisfies the <u>Matthews</u> and <u>Kelly</u> requirement. In the case at bar, the Plaintiff's claim that the process was inadequate is a thinly veiled displeasure as to the outcome, more than of the denial of due process. A legally sufficient opportunity to be heard was provided. As a matter of law, no liability can run to Defendant Bigelow, in her *individual capacity*, because she did not deny due process to the Plaintiff. Ample due process was provided to change the outcome.

### III.   DEFENDANT BIGELOW ENJOYS QUALIFIED IMMUNITY

In Def. Memo. at 32-40, Defendant Bigelow demonstrates that she is entitled to qualified immunity and statutory immunity in her individual capacity. In Pl. Opp. at 18-20, the Plaintiff claims that qualified immunity does not apply to actions brought against a state official in her individual capacity and cites to <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991) as authority for that proposition. The Plaintiff misstated the law. The <u>Hafer</u> Court did not hold that qualified

---

Bigelow for reinstatement. The Plaintiff waived any claim to reinstatement from Defendant Bigelow by not requesting that she do so. None of the pending claims run to reinstatement.

[12] When Students #2 and #3, each (separately) received notice and utilized the due process opportunity provided by Defendant Bigelow, neither the Plaintiff nor her parents were present. The Plaintiff in opposition can create no controversy that contradicts Defendant Bigelow's factual statements. See also footnote 11 above. Plaintiff misses the mark.

8

immunity does not apply to state officials sued in their *individual capacity*. The Hafer Court merely affirmed long standing doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment does not bar a suit against a public official in the official's individual capacity and, in Hafer's case, specifically under 42 U.S.C. § 1983. Hafer, 502 U.S. at 30-31. See Def. Memo. At 32-38. See Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Cot. 2727, 73 L.Ed.2d 396. The Plaintiff's statement does not defeat the qualified immunity or immunity from suit asserted by Defendant Bigelow as to her *individual capacity*.

In Pl. Opp. at 16-17, the Plaintiff concedes that Defendant Bigelow was performing a discretionary function when dismissing her from the program and then not dismissing Students #2 and #3. Bigelow held the power not to dismiss the Plaintiff, but elected to implement the dismissal after giving the Plaintiff the opportunity to be heard. No particular facts have been offered or supported that Defendant Bigelow was acting in a ministerial manner or otherwise not entitled to qualified immunity as a defense. The Plaintiff has failed to plead, demonstrate or even raise a factual basis to conclude that Defendant Bigelow's conduct was outside the parameters of her official duties. Qualified immunity and the statutory immunity of Conn. Gen. Stat. §4-165 remain in full force and effect. See Def. Memo. at 32-40.

Nor, as stated above, has the Plaintiff here not met her burden to show that the right in question was firmly established to such an extent that the decision maker (here Defendant Bigelow) was on notice that her conduct would or was a violation of the protected interest upon which the litigation is claimed. Young v. County of Fulton, 160 F.3d 899, 903 (2nd Cir. 1998). Again, the Plaintiff has not shown that a constitutional right to remain in a short term summer program existed. If Defendant Bigelow granted the right upon which the Plaintiff has based her claim, it would be within her power to rescind it completely. Even so, here, Defendant Bigelow

9

did not rescind or suspend the procedural protection, she modified it and modified in such a way that respected the need for an amount of due process that was appropriate to the right in question. All the actions done by Defendant Bigelow were done in consultation with her supervisor, Susan Lesser, Associate Director, and with an awareness of providing adequate due process and protecting the rights of the Plaintiff (as well as Student ## 2 and 3). *See* Def. Memo. Attachment F: Affidavit of Susan Lesser, ¶¶ 56-59. No violation occurred.

At best, the Plaintiff's claims sound in negligence in the performance of official duties in so much as the gravamen of the Plaintiff's claim is that she disagrees with Defendant Bigelow's final decision to dismiss her. Defendant Bigelow, *in her individual capacity*, enjoyed and continues to enjoy, even considering the Plaintiff arguments to the contrary, a right of qualified immunity and as a matter of law is entitled to judgment in that she was merely executing the duties of her position as Program Director. The government should benefit from a strong presumption of validity, including where there is a conceivable rational basis for its actions. Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

## IV. PLAINTIFF CONCEDED JUDGMENT ON HER CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Plaintiff did not brief and therefore conceded her Fourth Claim for Relief that sounded in intentional infliction of emotional distress. See footnote 2 above. Not addressing a claim leaves the issues of fact and law completely uncontested and the Court should enter judgment in favor of the movant on any unaddressed issue. Anderson, 477 U.S. at 255.

## V. CONCLUSION

The Court should grant summary judgment in favor of Defendant Bigelow, *in her individual capacity*, on all remaining issues in the above captioned matter.

10

So filed in reply, this 16th day of March, 2004.

              **DEFENDANT**

              **LISA MARIE BIGELOW**
              *In Her Individual Capacity*

              **RICHARD BLUMENTHAL**
              **ATTORNEY GENERAL**

BY: _____
      Nyle K. Davey
      Assistant Attorney General
      Federal Bar No. ct07736
      55 Elm Street (Annex 3rd Floor)
      P.O. Box 120
      Hartford, CT 06141-0120
      Tel: (860) 808-5160
      Fax: (860) 808-5384
      E-mail: nyle.davey@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Defendant Bigelow's Reply was mailed this 16th day of March, 2004, postage prepaid, to counsel for the plaintiff:

Cynthia R. Jennings
Barrister Law Group, LLC
211 State Street, 2nd Floor
Bridgeport, CT 06604

A copy was mailed to counsel for CREC and O'Donnell:

Linda Yoder
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

In addition, a courtesy copy was provided to the Chambers of:

The Honorable Ellen Bree Burns
United States District Judge
United States District Court
141 Church Street
New Haven, CT 06510

Nyle K. Davey
Commissioner of Superior Court

12