UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAKKARA BOGLE-ASSEGAI, | : | Consolidated |
| *Plaintiff* | : | CIVIL ACTION NO. |
| | : | 3:01CV2366 (EBB) |
| v. | : | (Lead Case) |
| | : | |
| LISA MARIE BIGELOW, In Her Individual Capacity, | : | |
| *Defendant* | | |

| | | |
|---|---|---|
| SAKKARA BOGLE-ASSEGAI, By Next Friend Femi Bogle Assegai | : | |
| | : | |
| v. | : | 3:01-CV-2367 (EBB) |
| | : | |
| CAPITOL REGION EDUCATION COUNCIL and MARK D. O'DONNELL, in his Official and Individual Capacities | : | FEBRUARY 17, 2005 |

**MEMORANDUM IN SUPPORT OF STATE OF CONNECTICUT'S
MOTION TO CORRECT PART OF COURT'S RULING**

On February 10, 2005, this court issued a ruling on defendants' motions for summary judgment in which it held in part that defendants CREC, a regional education service center ("RESC"), and Mark O'Donnell, as an employee of CREC, were agents of the State of Connecticut and entitled to the same immunity as the state. In light of the very recent decision of the Connecticut Supreme Court, Gordon v. H.N.S. Management Co., Inc., 272 Conn. 81 (2004); the Second Circuit's rule on determining whether an entity acts as an "arm-of-the state;" and the state's position that CREC is not a state entity or agent of the state, the state respectfully requests

that the Court amend its ruling to omit the this holding. *The requested limited amendment will not affect the Court's ultimate decision granting the motions for summary judgment filed by CREC and the state, but will correct the record and eliminate confusion in any future proceedings involving the parties.*[1]

The state's position is that CREC is not a state entity or arm of the state entitled to 11th Amendment immunity was recently buttressed by the criteria set forth by the Connecticut Supreme Court. See Gordon v. H.N.S. Management Co., Inc., 272 Conn. 81, 98-100 (2004). The Court's criteria make clear that CREC is not arm of the state and is not entitled to sovereign

---

[1] The state regrets not bringing this issue to the Court's attention earlier, but it has only recently come to the attention of the Attorney General's Office that RESCs, including CREC, have started a practice of asserting sovereign immunity in both the state and federal courts. The RESCs have done so without obtaining the state's permission to do so; providing the Attorney General's Office with an opportunity to state its position on the issue to the courts; or notifying the Attorney General's Office of their motions to dismiss or even the pendency of their lawsuits. This practice has caused confusion in the courts and the Office of the Claims Commission.

One particularly troublesome result is that plaintiffs, in response, have begun to file claims against the state for negligence of RESCs, seeking waiver of sovereign immunity that RESCS do not have. Such claims are subject to dismissal, as the Claims Commissioner has jurisdiction only over claims against the state, leaving plaintiffs with no remedy in the courts or at the Claims Commission. Moreover, because the Attorney General's Office represents only state agencies, it cannot represent RESCS against claims filed with the Claims Commissioner – or in the courts, for that matter. Conversely, as the private attorneys for the RESCs do not represent the state, they do not appear before the Claims Commissioner. See Conn. Gen. Stat. § 4-149.

Ironically, if the RESCs were successful in their attempts to establish themselves as state agencies, they would subject themselves to the numerous requirements and limitations of state agencies, the least of which would include having to give up their private attorneys, absent the consent of the Attorney General's Office and subject to state budgetary approval.

immunity. See id. at 98-100. The fact that CREC entered into a contract with a state agency does not change this conclusion.

CREC is not an executive, judicial or legislative agency or institution of the state of Connecticut or of any of the constitutional offices (e.g., Comptroller, Attorney General). See Conn. Const. art. 4, § 1 (State officers); Conn. Gen. Stat., Title 3 (State Elective Officers); www.ct.gov (executive agencies and constitutional offices); www.jud.state.ct.us (judicial branch); www.cga.ct.gov (legislature) (copies of state web pages attached as Exhibit A). Instead, RESCs, including CREC, are "bod[ies] corporate and politic" established by four or more *local* (not state) boards "for the purpose of cooperative action to furnish programs and services" to those local boards of education. See Conn. Gen. Stat. §§10-66a, 10-66c. The RESCs may be established "in any regional state planning area designated pursuant to section 16a-4a and upon approval by the State Board of Education..." Conn. Gen. Stat. § 10-66. "The operation and management of any regional education center shall be the responsibility of the board of such center to be composed of at least one member from each participating board of education, selected by such board of education." Conn. Gen. Stat. § 10-66c (a).

The State of Connecticut Ethics Commission has concluded that "although RESCs serve a public function, they are separate legal entities, not state agencies."[2] Ethics Commission

---

[2] The Ethics Commission was asked whether a bureau chief at the State Department of Education [SDE] could accept a position at as RESC and then represent it RESC before his former agency within a year after leaving state service. Ethics Commission Advisory Opinion No. 90-18. The

3

Advisory Opinion No. 90-18 ["Ethics Opinion"] (attached as Exhibit B); see also Affidavit of Mark Stapleton, Chief of the State Department of Education's Office of Legal and Governmental Affairs ["Stapleton Affidavit"] (attached as Exhibit C)].

CREC is also not an arm of the state under the criteria recently set forth by the Connecticut Supreme Court. See Gordon, 272 Conn. at 98-100. "[T]he criteria for determining whether a corporate entity is an arm of the state entitled to assert sovereign immunity as a defense are whether: (1) the state created the entity and expressed an intention in the enabling legislation that the entity be treated as a state agency; (2) the entity was created for a public purpose or to carry out a function integral to state government; (3) the entity is financially dependent on the state; (4) the entity's officers, directors or trustees are state functionaries; (5) the entity is operated by state employees; (6) the state has the right to control the entity; (7) the entity's budget, expenditures and appropriations are closely monitored by the state; and (8) a judgment against the entity would have the same effect as a judgment against the state." Id.

In Gordon, the Court applied these criteria and concluded that the bus company which operates Connecticut Transit was an arm of the state. Id. The Court relied on various facts to reach its conclusion: (1) the bus service was a governmental function created by the legislature because it was deemed essential and was not a private enterprise operated to generate profit; (2)

---

Commissioner concluded that because the RESC was not a state agency, representation of a RESC was not representation of the state and the former SDE employee could not represent the RESC before SDE within a year after leaving state service. Id.

4

the company was entirely financially dependent on the state: (a) the state owned all the assets including the buildings, the offices, everything in the offices and the buses; (b) all of the company's operating expenses were paid by the state on a monthly basis; and (c) the state owned all the bus fare receipts taken in by the company; (3) the bus service was subject to the control and oversight of the state in that the state had complete control of the bus routes, schedules and fares and made all policy decisions related to such; and (4) the company's budget was closely monitored by the state through the submission of annual and monthly budget estimates for approval and by the state providing the requested funds on a bimonthly basis. Id. at 102-104.

The Second Circuit employs an analysis similar to Connecticut's Court in determining whether an entity is an "arm of the state" entitled to Eleventh Amendment immunity. Mancuso v. New York State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996) (citing Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 59 L. Ed. 2d 401, 99 S. Ct. 1171 (1979); and Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)). Although the Eleventh Amendment does not apply to suits against counties, municipal corporations, and other political subdivisions,[3] such an entity is entitled to immunity "if it can demonstrate that it is more like 'an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" Id. (citing Mt. Healthy, 429

---

[3] As stated herein, CREC is not a county, municipal corporation or any other political subdivision, but a body corporate and politic established by four or more *local* (not state) boards for the purpose of cooperative action to furnish programs and services to the local boards of education that created it. See Conn. Gen. Stat. §§10-66a, 10-66c.

U.S. at 280). Following the Supreme Court's decision in <u>Lake Country Estates</u>, the Second Circuit considers six factors: (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state. <u>Id</u>. (citing <u>Lake Country Estates</u>, 440 U.S. 391; and <u>Feeney</u>, 873 F.2d at 630-31. Only if those factors point in different directions does the Court then turn to the next questions: "(a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk?" <u>Id</u>. (citing <u>Hess v. Port Authority Trans-Hudson Corporation</u>, 513 U.S. 30; 115 S. Ct. 394; 130 L. Ed. 2d 245, 404, 115 S. Ct. 394 (1994). The Court remains "mindful of the Supreme Court's emphasis that 'the vulnerability of the State's purse [is] the most salient factor.'" <u>Id</u>. (citing <u>Hess</u>, 115 S. Ct. at 404). "If all the elements are evenly balanced, this concern will control." <u>Id</u>.

CREC, as a RESC, fails to meet all of these criteria.

**1. CREC was not created by the state and the enabling legislation did not express the intent that it be treated as a state agency**

RESCs are not created by the state, but by local boards of education in order to work together to furnish programs and services to those local boards. <u>See</u> Conn. Gen. Stat. §§10-66a, 10-66c; <u>see also</u> Ethics Opinion; Stapleton Affidavit ¶ 5. Although state statutes permit RESCs

to be created and the State Department of Education must approve a proposed RESC,[4] a RESC can only be established by local boards of education. Conn. Gen. Stat. §10-66a; see Ethics Opinion; Stapleton Affidavit ¶ 5.

The enabling legislation distinguishes RESCs from state agencies in several ways: (1) the boards of RESCs are comprised of members of the *local* boards of education by which they are created; Conn. Gen. Stat. §§10-66a, 10-66b; Stapleton Affidavit ¶ 5; (2) those boards are required to file with the State Department of Education the same reports as are local boards of education; see Conn. Gen. Stat. §§10-66g, 10-66h, 10-66i; Stapleton Affidavit ¶ 10; (3) employees of RESCs are not state employees and the state does not participate in any way in the hiring or termination of RESC employees, or in determining their compensation; see Conn. Gen. Stat. §10-66c(a) (the board of each RESC employs its own personnel); Ethics Opinion; Stapleton Affidavit ¶ 7; (4) although RESCs receive some grant money from the state for administrative purposes, their primary source of funding is fees paid by the *local* districts by which they are formed; see Conn. Gen. Stat. §10-66e; Stapleton Affidavit ¶ 8; and (5) RESCs may (and do) maintain a cash balance from year to year, which state agencies cannot. Stapleton Affidavit ¶13.

RESCs are not treated as state agencies by the state and are not subject to the various requirements of state agencies. For example, RESCs are not subject to the state code of ethics,

---

[4] The State Department of Education's approval of a RESC does not make it an arm of the state any more than the Department of Higher Education's accreditation of a private, independent college makes the private college a state agency. See Conn. Gen. Stat. §§10a-6 & 10a-34 (authorizing the DHE to accredit institutions of higher learning).

with which state agencies must comply. See Conn. Gen. Stat. §§1-83(a) (1) and (2); Ethics Opinion; Stapleton Affidavit ¶ 11. RESCs are not prohibited, as are state agencies and quasi-public agencies, from retaining lobbyists; Conn. Public Act 02-46; Stapleton Affidavit ¶ 12; and are not represented by the Office of the Attorney General. Although they may issue bonds, said bonds "shall not be the obligation of the State of Connecticut or any municipality, and each such bond, note or other obligation shall so state on its face." Conn. Gen. Stat. §10-66c(c); see 1990 AG Opinion AG LEXIS 25 (June 28, 1990) (Connecticut Convention Center Authority, although identified by statute as a political subdivision of the state, was created as a public entity separate from the state – bonds, notes and other obligations not backed by the state) (Exhibit D); 1982 AG Opinion AG LEXIS 103 (December 27, 1982) (Housing Authority not a state agency; bonds not backed by the State of Connecticut) (Exhibit E); 1974 AG Opinion (December 18, 1974) (Connecticut Arts Foundation is a state entity; bonds of the state could be issued on behalf of the Foundation) (Exhibit F).

    CREC itself does not identify itself as a state agency and refers to itself as a "Regional Educational Service Center (RESC)" established through legislation "permit[ting] local boards of education to establish a RESC as a "public educational authority." (See CREC website: http://www.crec.org./about/index.shtml) (CREC web pages attached as Exhibit G).

### 2. CREC does not carry out a function which is integral to state government, but rather one related to municipalities and local boards of education.

RESCs carry out a governmental function by facilitating its member *local* boards of education in the provision of educational service; nonetheless, they do not provide this service statewide. See Conn. Gen. Stat. §10-66a et seq. Rather, as their name suggests, they provide this function regionally. See id. Just as local boards of education are not agents of the state for the purposes of tort claims,[5] see Purzycki v. Town of Fairfield, 244 Conn. 101, 112 (1998) (claim of negligent supervision); see also Heigl v. Board of Education of Town of New Canaan, 218 Conn. 1, 3-4 (1991); Cahill v. Board of Education, 187 Conn. 94, 102 (1982); Cheshire v. McKenney, 182 Conn. 253 (1980), R. A. Civitello Co. v. New Haven, 6 Conn. App. 212, 218 (1986); RESCs, made up of local boards, also are not.

"A suit against a municipality is not a suit against a sovereign." Murphy v. Ives, 151 Conn. 259, 264 (1963).[6] Members of local boards of education and employees of local boards of

---

[5] Local boards of education act as agents of the state only when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate set forth in article 8, section 1, which is to guarantee free public education. See Cheshire v. McKenney, 182 Conn. 253, 258 (1980). Local boards of education are agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits. See, e.g., Russell v. McKenna, 1998 WL 96314 (Conn. Super. 1998) (citing Civitello, 6 Conn. App. at 218-19) (attached as Exhibit H); see also Sheff v. O'Neill, 238 Conn. 1, 31 n. 21 (1995).

[6] Local boards of education, also are not state agencies or boards under the Uniform Administrative Procedure Act Connecticut General Statutes § 4-166(a)(1) provides: "'Agency' means each state board, commission, department or officer authorized by law to make

education are municipal officials and employees, respectively. Cheshire, 182 Conn. at 259-60. A local school district, like a RESC, is a body corporate that has the power to sue and be sued. See Conn. Gen. Stat. §10-241; Cahill v. Board of Education of the City of Stamford, 187 Conn. 94, 102 (1982) ("A local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations"); see also Conn. Gen. Stat. §10-240.

CREC states on its website that it "is governed by publicly elected board of education members who are appointed by each school district within the Capitol Region;" that "[o]ne representative from each of CREC's school boards forms a Council with policy-making responsibilities;" that it "also has a 10-person Board of Directors elected by the Council;" and that "[t]he control of the Capitol Region Education Council rests squarely at the local level." (See CREC website: http://www.crec.org./about/facts.shtml).

### 3. CREC is not financially dependent on the state.

The administrative and overhead expenditures incurred by the RESC are shared jointly by the participating *local* boards of education. See Conn. Gen. Stat. § 10-66e. RESCs receive some state funding in the form of grants; however, their primary source of funding is fees paid by the local school districts. See id.; Stapleton Affidavit, ¶ 8. Accordingly, their operations, except for leases, are not appropriated for in the state's legislative budget. See, e.g., Special Act 03-1 (June 2003); see also Ethics Opinion.

---

regulations or to determine contested cases, but does not include . . . town or regional boards of education . . . ."

CREC's website informs us that "[m]ember districts support CREC through the purchase of its services;" that it "is supported by local, state, federal and private funds;" and that "[e]ach CREC program has a discreetly funded budget which totally supports it and contributes a proportionate share to CREC's overall management and development." (See CREC website: http://www.crec.org./about/index.shtml). The website indicates the source of their revenue as follows: "63% Local, 35% State/Federal, 2% Private Funds." (See CREC website: www.crec.org).

Thus, CREC's financial situation is very different from that of the management company in Gordon, where the state owned the entity's buildings, everything within the offices and the buses and the fares collected from riders; and where the state paid all of the company's operating expenses.

**4. CREC's officers and directors are not state functionaries.**

"The operation and management of any regional educational service center shall be the responsibility of the board of such center to be composed of at least one member from each participating [local] board of education, selected by such board of education." Conn. Gen. Stat. § 10-66b; see also Stapleton Affidavit. The board of each RESC is empowered to "establish policies for the regional educational service center, to determine the programs and services to be provided, to employ staff including a director of the center, to prepare and expend the budget and . . . to provide for the financing of the programs and projects of the [RESC]." Conn. Gen. Stat. §10-66c(a). The local boards of education select the members of the RESC board who are

responsible for its operation and management. Id. CREC's authority, like every other RESC's, is limited to those specified by written agreement of the member local boards of education. Id.

The CREC website states:

> CREC is governed by publicly elected board of education members who are appointed by each school district within the Capitol Region. One representative from each of CREC's school boards forms a Council with policy-making responsibilities. CREC also has a 10-person Board of Directors elected by the Council. Membership on the Board of Directors includes representation of small, medium, and large districts….

(See CREC website: http://www.crec.org./about/purpose.shtml). CREC emphasizes that it "work[s] with *local* school systems to meet their needs and the needs of students" of the *local* Boards of Education" (emphasis added). (See CREC website: http://www.crec.org./about/purpose.shtml).

**5. CREC is not operated by state employees.**

The employees of CREC, like those of other RESCs, are not state employees. Employees of regional educational service centers are not state employees and the state does not participate in any way in the hiring or termination of RESC employees, or in determining their compensation; see Conn. Gen. Stat. §10-66c (a) (the board of each RESC employs its own personnel); Stapleton Affidavit; ¶ 7; see also Ethics Opinion ("…the salaries of RESC employees are paid by the RESC itself; they are not on the state payroll").

### 6. The state does not control CREC.

As discussed above, the board of CREC, which is not made up of state officials, controls CREC. Unlike the company in Gordon, where the state had complete control of the bus routes, schedules and fares and made all policy decisions related to them, the state does not control the workings of CREC. As stated on its website, "[t]he control of the Capitol Region Education Council rests squarely at the *local* level" (emphasis added). (http://www.crec.org./about/facts.shtml).

### 7. CREC's budget is not closely monitored by the state

Other than whatever control the state has over any state grant CREC (or any other grant recipient) receives, the state does not monitor its budget. In Gordon, the company's budget was closely monitored through the submission of annual and monthly budget estimates submitted to the state for approval. 272 Conn. at 103-104. Also, the state provided the company in Gordon with the requested funds on a bimonthly basis. Id. There is no such monitoring or control by the state of RESC's budgets.

### 8. A judgment against CREC would not have the same effect as a judgment against the state

Unlike the situation in Gordon, where the contract between the state and the entity operating CT Transit included a clause that payment of any damage award by the entity would be reimbursed by the state, see 272 Conn. at 104, there is no vehicle by which a judgment against

CREC would have the same effect as one against the state. CREC's financial obligations are its own and not binding upon the state.

The state is aware of a previous ruling by Judge Eginton that another RESC (not CREC) was entitled to the sovereign immunity of the state. See Brown v. Area Cooperative Educational Services, Ruling on Motion to Dismiss, 3:02-CV-1218 (WWE) (2003) (attached as Exhibit I). Yet, in that case, decided before Gordon, neither the state nor any other state agency was a party. See id. Consequently, the Attorney General's office had no appearance in the matter, was given no notice of the suit and had no opportunity to argue its position that the defendant RESC was not a state agency entitled to sovereign immunity. Moreover, the Court in Brown did not have the benefit of the Supreme Court's criteria in Gordon, which not decided until December of 2004, did not apply the Second Circuit's criteria and, upon information and belief, did not seek an opinion from the state as to whether the defendant was acting on the state's behalf. Thus, apparently in reliance of the defendant's assertion, the Court wrongly assumed that because Section 10-66c states that the board of a RESC acts on behalf of the State of Connecticut, it is an agent of the state and assumed further that, because it is an agent of the state, it is protected by the shield of Eleventh Amendment immunity. See Brown, at p. 2. In doing so, the Court neglected to apply the legal criteria for the "arm-of-the state" doctrine or to recognize the significance of those parts of the statute that define a RESC as "a body corporate and politic" and grant RESCs "the power to sue and be sued." See Conn. Gen. Stat. §10-66c (a).

The issue of the defendant's sovereign immunity should never have been reached by the Courts in <u>Brown</u> because a RESC is neither a state agency nor an arm of the state entitled to assert Eleventh Amendment immunity. The <u>Brown</u> decision, which is not binding on this Court, should not be relied upon here; particularly since it does not reflect the analysis set forth by the Second Circuit or the Connecticut Supreme Court. Instead, the Court should apply the Court's criteria, conclude that CREC is not an arm of the state entitled to the state's immunity, and amend its decision accordingly.

**DEFENDANT**
CENTRAL CONNECTICUT
STATE UNIVERSITY

BY: RICHARD BLUMENTHAL
ATTORNEY GENERAL

_____
Linsley J. Barbato
Assistant Attorney General
Federal Bar No. ct 03751
55 Elm Street
P. O. Box 120
Hartford, CT 06141-0120
Telephone: (860) 808-5160
Facsimile: (860) 808-5384
E-mail: linsley.barbato@po.state.ct.us

**CERTIFICATION**

I hereby certify that a copy of the foregoing Defendant State's Memorandum in Support of Motion to Correct Ruling was mailed this 17th day of February, 2005, postage prepaid, to counsel for the plaintiff:

Cynthia R. Jennings
Barrister Law Group, LLC
211 State Street, 2nd Floor
Bridgeport, CT 06604

A copy was mailed to counsel for CREC and O'Donnell:

Linda Yoder
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

In addition, a courtesy copy was provided to the Chambers of:

The Honorable Ellen Bree Burns
United States District Judge
United States District Court
141 Church Street
New Haven, CT 06510

_____
Linsley J. Barbato
Assistant Attorney General