UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAKKARA BOGLE-ASSEGAI, | : | |
| | : | |
| Plaintiff | : | |
| | : | Consolidated 3:01cv2366 |
| v. | : | (EBB) (Lead Case) |
| | : | |
| LISA MARIE BIGELOW, In Her | : | |
| Individual Capacity, | : | |
| | : | |
| Defendant | : | |
| | : | |

| | | |
|---|---|---|
| SAKKARA BOGLE-ASSEGAI,By Next | : | |
| Friend Femi Bogle Assegai | : | |
| | : | |
| v. | : | 3:01cv2367 (EBB) |
| | : | |
| CAPITOL REGION EDUCATION COUNCIL | : | |
| and MARK D. O'DONNELL, in his | : | |
| Official and Individual Capacities | : | |

**<u>RULING ON STATE OF CONNECTICUT'S MOTION TO CORRECT PART OF
COURT'S RULING ON SUMMARY JUDGMENT</u>**

On February 10, 2005, this Court issued a ruling on Defendants' motions for summary judgment, in which it held in part that Defendants Capital Region Education Council ("CREC"), a Regional Education Service Center ("RESC") and Mark O'Donnell, as an employee of CREC, were agents of the State and entitled to the same immunity as the state. [Doc. No. 91].

The State of Connecticut filed a motion to amend this part of the Court's ruling, asserting that under the rules for determining when an entity acts as an arm of the state for sovereign immunity purposes, as set forth by the Connecticut Supreme Court and the Second Circuit, CREC is not a state entity or agent of the state.

For the following reasons, the State's motion to correct [Doc. No. 94] is GRANTED.  In granting this motion, the Court explicitly notes that its amended factual finding that Defendants are not arms of the state does *not* affect its decision granting Defendants' motions for summary judgment.

## DISCUSSION

The Court amends its ruling in order to make it consistent with the rules on determining when an entity acts as an "arm of the state", as set forth by the Connecticut Supreme Court in <u>Gordon v. H.N.S. Management Co., Inc.</u>, 272 Conn. 81 (2004) and by the Second Circuit in <u>Mancuso v. New York State Thruway Auth.</u>, 86 F.3d 289, 292 (2d Cir. 1996).

In <u>Gordon</u>, the Connecticut Supreme Court noted that it had not previously had the opportunity to consider whether a private entity could, as an "arm of the state", raise a sovereign immunity defense.  272 Conn. at 93.  After an exhaustive review of the relevant authorities, the Court set forth the following test for determining whether a corporate entity is an arm of the state entitled to assert sovereign immunity:

> "(1) the state created the entity and expressed an intention in the enabling legislation that the entity be treated as a state agency; (2) the entity was created for a public purpose or to carry out a function integral to state government; (3) the entity is financially dependent on the state; (4) the entity's officers, directors or trustees are state functionaries; (5) the entity is operated by state employees; (6) the state has the right to control the entity; (7) the entity's budget, expenditures and appropriations are closely

2

> monitored by the state; and (8) a judgment against
> the entity would have the same effect as a judgment
> against the state." 272 Conn. at 98-101.

An entity need not establish all criteria. Rather, "[a]ll relevant factors are to be considered cumulatively, with no single factor being essential or conclusive." Id. at 101, quoting Connecticut Human Society v. Freedom of Information Commission, 218 Conn. 757, 761, 591 A.2d 395 (1991).

The Capitol Region Education Council ("CREC"), as a type of Regional Education Service Center ("RESC")[1], does not meet the Gordon test outlined above. RESCs are not state agencies, nor are they treated as such. An RESC is a "body corporate and politic" created by local boards of education, not by the state. Conn. Gen. Stat. §§ 10-66a, 10-66c.[2] The members of RESC boards are selected by the local boards of education. See § 10-66c. The employees of RESCs are not state employees, and the state does not participate in the hiring or termination of RESC employees. See § 10-66c(a) (stating that RESC boards have the authority to employ staff and to prepare and expend the budget). RESCs are not financially dependent on the state, as their primary source of funding for RESCs comes

---

[1] CREC identifies itself as "one of six Regional Educational Service Centers (RESCs) established under Connecticut General Statute 10-66 a-n . . ." CREC Website, http://www.crec.org/crec/about/index.php (last visited October 25, 2007).

[2] Although the State Department of Education must approve a proposed RESC, a RESC can only be established by local boards of education. See Conn. Gen. Stat. § 10-66a.

from the local districts by which they are formed, not the state.
See § 10-66e (stating that "the necessary administrative and
overhead expenditures as determined by the board of the regional
educational service center shall be shared jointly by the
participating boards of education").  An RESC has the power to sue
and be sued.  § 10-66c(a).  Moreover, although RESCs may issue
bonds, the bonds "shall not be obligations of the state of
Connecticut or any municipality, and each such bond, note or other
obligation shall so state on its face." § 10-66c(c).  Finally, on
its website, CREC itself notes that it is not controlled by the
state. CREC Website, http://www.crec.org/crec/about/index.php (last
visited October 25, 2007) (explaining that "[t]he control of the
Capitol Region Education Council rests squarely at the local
level").

    Furthermore, CREC is not entitled to assert sovereign immunity
under Second Circuit caselaw.  The Second Circuit has held that a
court is required to initially consider six factors in order to
determine whether an entity is an arm of the state entitled to
immunity under the Eleventh Amendment.  See Mancuso v. N.Y. State
Thruway Auth., 86 F.3d 289, 293 (2d Cir. 1996).  These factors,
derived from the Supreme Court's decision in Lake Country Estates,
Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401-02, 99
S.Ct. 1171 (1979) are: (1) how the entity is referred to in its
documents of origin, (2) how the governing members of the entity

are appointed, (3) how the entity is funded, (4) whether the
entity's function is traditionally one of local or state
government, (5) whether the state has a veto power over the
entity's actions and (6) whether the entity's financial obligations
are binding upon the state. Mancuso, 86 F.3d at 293. If these
factors point in one direction, the inquiry is complete. If not,
the court must determine whether a suit against the entity in
federal court would threaten the integrity of the state or expose
its treasury to risk. Id. at 296. Applying these six factors to
the characteristics of RESCs already noted above, it is clear that
RESCs cannot be considered arms of the state under Second Circuit
caselaw.

The Court's amended factual finding that Defendants are not
arms of the state entitled to assert sovereign immunity does not
change its decision granting summary judgment on all counts in
favor of Defendants, because the Court's reasoning did not rely on
a finding that Defendants enjoyed sovereign immunity. Instead, the
Court held that on the facts presented, "no reasonable jury could
find in Plaintiff's favor, as there exists not a scintilla of
credible, admissible evidence in support of any of her positions
taken." [Doc. No. 91 at 43]. Specifically, this Court found that
(1) on Plaintiff's First Amendment claim, Plaintiff had submitted
no credible evidence that she was dismissed for speaking out
against racism, as opposed to the overwhelming evidence

5

demonstrating that she was dismissed due to her classroom behavior problems [Doc. No. 91 at 30], (2) any due process rights Plaintiff might have enjoyed by virtue of her asserted property interest in the summer academic program offered by CREC were not violated, Id. at 34-35, (3) Plaintiff's claim that her dismissal from the summer program violated the anti-discrimination provisions under Section 46a-75 of the Connecticut General Statutes was completely devoid of legal and factual merit, Id. at 37-38 and (4) Plaintiff's allegations of intentional infliction of emotional distress merely offered conclusory allegations, devoid of any factual support that would indicate that Defendants' conduct met the high threshold of "extreme and outrageous" behavior. Id. at 40, 43.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the State of Connecticut's motion to correct part of Court's ruling on summary judgment. [Doc. No. 94].


SO ORDERED



_____/s/_____

ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE


Dated at New Haven, Connecticut this      day of October 2007.

6